UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SOUTHERN-OWNERS INSURANCE COMPANY,

    Plaintiff,

v.                                Case No. 8:21-cv-2567-VMC-SPF

GALATI YACHT SALES, LLC,
JEFFCO MARINE SERVICES, INC.,
and JEFFERSON FORAKER,

    Defendants.

_____/

**ORDER**

This matter is before the Court on consideration of the Motion to Dismiss filed by Defendant Galati Yacht Sales, LLC, on January 31, 2022. (Doc. # 25). Defendants Jeffco Marine Services, Inc. and Jefferson Foraker have expressed their desire to join in Galati's Motion. (Doc. # 29 at 1-3). Plaintiff has responded. (Doc. ## 35, 39). For the reasons described below, the Motion is denied.

**I.**    **Background**

This case involves an insurance dispute and an underlying lawsuit between some of the parties.

1

### A.   The Underlying Lawsuit

On August 19, 2021, Foraker sued Galati in Florida state court for negligence (the "Underlying Lawsuit"). (Doc. # 1-1). In his state-court complaint, Foraker alleged that, through his business, Jeffco Marine Services, Inc., he performed marine detailing work for Galati. (Id. at 1-2). On or about October 9, 2020, Foraker boarded a vessel, the "Red Lion," at Galati's request to perform some marine-detailing work. (Id. at 3). Galati required its subcontractors, like Foraker, to wear shoe coverings so as not to scuff the deck of the boats. (Id.). Foraker alleged that, due to Galati's alleged negligence, he fell from the top of a tower or ladder on the boat, sustaining significant injuries. (Id. at 3-4).

Manatee County Clerk of Court records indicate that the Underlying Lawsuit is still open and active, with the state court having scheduled a hearing for May 2022 on Galati's pending motion for summary judgment.

### B.   The Insurance Policy

According to the operative complaint, Plaintiff Southern-Owners Insurance Company issued a Garage Liability Policy (the "Policy") to Defendant Jeffco that was effective from March 25, 2020 until March 25, 2021. (Doc. # 6 at ¶ 12). The Policy contains an Additional Insured Endorsement,

stating that Galati is an additional insured under the Policy "but only with respect to liability arising out of [Jeffco's] work for that insured by or for [Jeffco]." (Id. at ¶ 20). Pursuant to that endorsement, Galati sought a defense and indemnification from Southern-Owners in the Underlying Lawsuit. (Id. at ¶¶ 15, 17).

The Policy also contains an Employer's Liability Exclusion, which excludes from coverage "Bodily injury to: (a) [a]n employee of any insured arising out of and in the course of employment by any insured." (Id. at ¶ 21); see also (Doc. # 1-3 at 1).

Finally, the Policy also contains a Worker's Compensation Exclusion, which provides that the insurance policy does not apply to "[a]ny obligations that would be payable under . . . worker's compensation law[.]" (Doc. # 6 at ¶ 22).

### C. The Instant Complaint

Southern-Owners seeks a declaratory judgment on three points. First, Southern-Owners claims that the allegations in the Underlying Lawsuit arise out of Galati's general business practices and thus are excluded from coverage under the plain language of the Policy. (Doc. # 6 at 5-6). Second, it argues that the Employer's Liability Exclusion serves to bar

3

coverage because Foraker was Jeffco's employee, Foraker was acting in the scope of his employment when he was injured, and Foraker was thus Galati's "statutory employee" for purposes of Policy coverage. (Id. at 6-7). Third, Southern-Owners alleges that the Worker's Compensation Exclusion bars coverage because Foraker was injured while performing work requested by Galati, Foraker was therefore Galati's "statutory employee," and Galati is liable under Florida's worker's compensation law to Foraker. (Id. at 8-9).

Therefore, Southern-Owners seeks a declaration that: (1) the Policy does not provide insurance coverage for the claims alleged in the Underlying Suit or any and all other claims arising from the incident that occurred on October 9, 2020; and (2) that Southern-Owners has no duty to defend or indemnify Galati for any and all claims alleged in the Underlying Suit or any and all other claims arising from the incident that occurred on October 9, 2020. (Id. at 6, 7-8, 9).

On January 31, 2022, Galati filed a motion to dismiss the amended complaint. (Doc. # 25). Foraker and Jeffco have both attempted to join in Galati's Motion but, because the Motion is due to be denied for the reasons explained below, their request is moot. The Court solicited additional

4

information from the parties and has reviewed the material provided.[1] The Motion is now ripe for review.

## II. Legal Standard

Southern-Owners brings the instant lawsuit pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment Act provides, in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

As the Supreme Court has explained, the Act vests federal district courts with discretion "in determining whether and when to entertain an action under the Declaratory Judgment

---

[1] In reviewing a motion to dismiss, the district court may consider extrinsic documents if they are (1) central to the plaintiff's claim and (2) their authenticity is not challenged. SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010). The additional documents that the Court considered here, including the insurance policy and the state court documents, are at the very heart of both Southern-Owners' declaratory judgment claim and the issue of whether this Court must abstain in favor of the state court action. Thus, the Court will consider them. See Celtic Ins. Co. v. Digestive Med. Histology Lab, LLC, No. 19-24252-CIV, 2019 WL 13020860, at *2 (S.D. Fla. Dec. 20, 2019) (considering county small-claims actions and other documents in determining abstention in declaratory judgment case).

Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995); see also Id. at 288 (explaining that, in enacting the Declaratory Judgment Act, Congress "sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants"). Consequently, "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." Id. at 288. "[S]pecial flexibility is called for in the declaratory judgment context, where the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." United Purchasing Ass'n, LLC v. Am. Valve, Inc., No. 6:08-cv-515-GAP-GJK, 2008 WL 2557559, at *1 (M.D. Fla. June 20, 2008) (alteration added) (internal quotation marks and citations omitted).

### III. Analysis

Galati argues that the amended complaint should be dismissed for lack of subject matter jurisdiction pursuant to the abstention doctrine. (Doc. # 25 at 1). Galati argues that

this lawsuit is premature until such time as the Underlying Lawsuit is resolved and the state court has determined Galati's liability. (Id. at 2-3). Galati maintains that the policies of "efficiency, comity, and federalism" all weigh heavily in favor of dismissal of this action. (Id. at 5).

Southern-Owners rejoins that the abstention doctrine[2] does not apply because the Underlying Lawsuit (1) is not a "parallel" proceeding presenting the same issues between the same parties; (2) does not encompass the complete controversy and does not address the insurance coverage issues at the heart of this case; (3) will not resolve this federal declaratory-judgment action; and (4) does not involve a compelling state interest. (Doc. # 35).

The Declaratory Judgment Act "gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005). Further, the Declaratory Judgment Act is "an enabling Act, which confers a discretion

---

[2] As the Eleventh Circuit has noted, the term "abstention" is not technically correct because the decision to stay or dismiss an action under the Declaratory Judgment Act does not require the Court to reach for a judicially-created abstention doctrine. Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc, 12 F.4th 1278, 1282 n.2 (11th Cir. 2021). Rather, the Act itself provides the Court with the necessary discretion. Id.

on the courts rather than an absolute right upon the litigant." Wilton, 515 U.S. at 287 (internal quotation marks and citations omitted). "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942). The Eleventh Circuit has provided the district courts with a series of "guidepost" factors to aid in balancing state and federal interests while deciding whether to exercise jurisdiction over a declaratory judgment case:

   (1)  the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

   (2)  whether the judgment in the federal declaratory action would settle the controversy;

   (3)  whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

   (4)  whether the declaratory remedy is being used merely for the purpose of "procedural fencing" — that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;

   (5)  whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

    (6)   whether there is an alternative remedy that is better or more effective;

    (7)   whether the underlying factual issues are important to an informed resolution of the case;

    (8)   whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

    (9)   whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Ameritas, 411 F.3d at 1331. Not all of these guideposts are required, nor is any one guidepost controlling. Id. Rather, this Circuit follows a totality-of-the circumstances standard.

    The Eleventh Circuit revisited this topic just last year, stating that "[w]hen a district court is deciding whether to dismiss or stay a [Section] 2201(a) declaratory judgment action in favor of a concurrent proceeding, we agree that the degree of similarity between the proceedings is significant," such that "the greater the difference between concurrent proceedings, the less likely refusing to exercise jurisdiction will further the principles of wise judicial administration, federalism, comity, and avoidance of duplicative and officious federal proceedings." Nat'l Tr.

9

Ins. Co. v. S. Heating & Cooling Inc, 12 F.4th 1278, 1285 (11th Cir. 2021). The degree of similarity between the concurrent proceedings is not itself a "discrete" factor (or a "tenth guidepost") but, rather, is "encompassed by the relevant Ameritas guideposts, and it is granted weight in the balancing of those guideposts." Id. at 1286.

Here, looking at the totality of the circumstances, the Court concludes that this case is not sufficiently similar to the Underlying Lawsuit to merit dismissal or a stay of this matter. While they may arise from the same incident and include some of the same parties, the essential dispute in each is different. The state case involves a classic tort claim — whether Galati negligently breached a duty of care that it owed to Foraker and, if so, to what extent Foraker's damages can be attributed to Galati's negligence. This declaratory-judgment case, on the other hand, turns on the interpretation of an insurance contract and the issue of whether Galati may claim coverage under the subject Policy. True, part of this case will be deciding whether Foraker was Galati's "statutory employee" such that he falls within certain Policy exclusions and/or whether Galati's liability "arises out of" Jeffco's or Foraker's work for Galati. But Galati has not demonstrated how the state court's decision on

the tort claim would affect either of those determinations. Indeed, as Defendants Jeffco and Foraker concede, "there are no pending motions or otherwise in the state court action which address the issues of Mr. Foraker's employment status with Galati, whether he was a 'statutory employee,' whether he is eligible to receive worker's compensation benefits, and/or whether Mr. Foraker is foreclosed under Florida's Worker's Compensation Law from bringing a negligence suit against Galati, nor have any of these issues been raised as an affirmative defense in that action."[3] (Doc. # 44 at 2-3).

---

[3] In Florida, worker's compensation is generally the exclusive remedy available to an injured employee for the negligence of his employer. Endurance Am. Specialty Ins. Co. v. United Constr. Eng'g, Inc., 343 F. Supp. 3d 1274, 1278 (S.D. Fla. 2018). Under Florida's Worker's Compensation Law, an "employee" is any person who receives remuneration from an employer for the performance of any work or service. See Fla. Stat. § 440.02(15)(a) (defining "statutory employee" under the Workers' Compensation Law). A contractor who sublets work to a subcontractor becomes liable for the payment of compensation to the subcontractor's employees if the subcontractor fails to secure worker's compensation insurance. Endurance, 343 F. Supp. 3d at 1279. In that scenario, the contractor becomes the "statutory employer" of the subcontractor's employees. Id. And such "statutory employees" are treated identically under the Florida Worker's Compensation Law to actual employees in relation to standard employee exclusion clauses in insurance policies. Id. The Court takes no position at this time on Foraker's employment status; it merely points out that this distinction could have factored into the state court case. Upon review, it is apparent that the state court will not be taking up this issue – it was not raised as an affirmative defense or in Galati's motion for summary judgment.

Thus, looking to the Ameritas factors, the decision in this case about whether Galati qualifies for insurance coverage under the Policy would not settle in any way the central questions of negligence and liability at issue in the concurrent state proceeding. Relatedly, this federal declaratory action would not serve a useful purpose in clarifying the legal relations at issue in the state case. And as the questions presented are so different, there is little to no danger that the use of a declaratory action would increase the friction between federal and state courts or improperly encroach on state jurisdiction. Nor has Galati demonstrated a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

The Court's decision is buttressed by Judge Brasher's concurring opinion in National Trust, in which he pointed out that National Trust differed from those "run of the mill" declaratory-judgment cases "that insurers reasonably expect the federal courts to resolve" for two reasons. Nat'l Tr., 12 F.4th at 1290. First, the state law at issue there – whether carbon monoxide is a "pollutant" under a pollution exclusion in a liability insurance contract – was an open question under

12

Alabama law, which increased the state's interest in determining the issue of first impression. Id. at 1290-91. Second, "unlike most declaratory judgment actions between a liability insurer and its insured, this lawsuit turns more on the facts of the alleged tort than an interpretation of the insurance contract." Id. at 1291. Indeed, in National Trust, the relevant pollution policy exclusion had a "hostile fire exception" which would apply if the tortfeasor's misalignment of the subject HVAC unit's furnace burner caused the fire to burn in the wrong place, thus causing the carbon monoxide fumes which killed two people. Id. at 1282. As the Eleventh Circuit explained, this decision created significant overlap with the state court case:

> So, even if carbon monoxide were a pollutant under the insurance policy, the district court would nevertheless be required to decide whether the Hoges' deaths fall within the hostile fire exception. That inquiry would include determining the alignment of the burner and the extent to which any misalignment was responsible for the Hoges' deaths. That analysis . . . would significantly overlap with the factual evaluation that the Alabama state court will undertake to determine liability in the wrongful death action. Those and other issues counseled against the district court resolving National Trust's declaratory judgment action.

Id.

This case, however, presents none of the complicating factors present in National Trust. See Id. The parties have not pointed to any open or fragmented questions of state law for this Court to decide in the first instance. And there is no indication of the sort of factual overlap present in National Trust. The circumstances, therefore, counsel against the dismissal or stay of this action. See Auto-Owners Ins. Co. v. Cymbal Props., LLC, No. 1:21-00111-KD-B, 2021 WL 4314458, at *7 (S.D. Ala. Sept. 22, 2021) (applying Ameritas factors to find that federal court need not abstain from deciding parameters of insurance policy where the resolution of any disputed factual issues by the state court was "irrelevant" to the resolution of the federal case nor was there any overlap of the legal issues presented because "[t]he issue of the insured's liability has not been raised in the federal case, and the issue of insurance coverage has not been raised in the state-court case[]. While the cases are related, they are separate – there is no reasonable risk of inconsistent rulings, duplication of effort, or federal entanglement with state court proceedings"); Northland Ins. Co. v. Top Rank Trucking of Kissimmee, Inc., 823 F. Supp. 2d 1293, 1296 (M.D. Fla. 2011) (allowing insurer's declaratory judgment claim to proceed where the state court case involved

issues of negligence and vicarious liability whereas the "only question" in the federal declaratory judgment case was whether the plaintiff insurance company had an obligation under its policy).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Galati Yacht Sales, LLC's Motion to Dismiss (Doc. # 25) is **DENIED.**

(2) Defendant Galati's answer to the complaint is due 14 days from the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 9th day of May, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE