UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SOUTHERN OWNERS INSURANCE
COMPANY,

    Plaintiff,

v.                              Case No. 8:21-cv-2567-VMC-MRM

GALATI YACHT SALES, LLC,
JEFFCO MARINE SERVICES, INC.,
and JEFFERSON FORAKER,

    Defendants.
_____/

**ORDER**

    This matter comes before the Court upon consideration of Plaintiff Southern Owners Insurance Company's Motion for Summary Judgment (Doc. # 93), and Defendant Galati Yacht Sales, LLC's Motion for Summary Judgment. (Doc. # 92). Galati responded to Southern Owners' Motion (Doc. # 100), and Southern Owners has replied. (Doc. # 102). Southern Owners has responded to Galati's Motion for Summary Judgment. (Doc. # 99). For the reasons that follow, Southern Owners' Motion is denied, and Galati's Motion is granted to the extent stated herein.

1

I.   **Background**

     This   case   involves   an   insurance   dispute   and   an
underlying tort lawsuit between Jefferson Foraker and Galati.

   A. **The Parties**

     Jeffco   Marine   Services   was   incorporated   under   Florida
law on December 22, 2008. (Doc. # 93-2). Mr. Foraker was its
owner   and   served   as   its   President   at   all   relevant   times.
(Id.). Mr. Foraker, through Jeffco, performed services for
Galati from 2007 to 2020. (Doc. # 93-11 at 7:19-21).

     In   October   2009,   Jeffco   and   Galati   entered   into   a
Subcontractor   Agreement.   (Doc.   #   93-3).   The   Subcontractor
Agreement stated that it is "attached to and forms a part of
every   work   order   or   change   order   executed   by   the   parties."
(Id. at 1). The Subcontractor Agreement also provided that
Galati   would   be   "named   as   an   Additional   Insured   on   all   of   the
Subcontractor's   policies   of   insurance   (except   workers
compensation)   and   the   policies   shall   provide   insurance
coverage, on a primary basis, to Galati, and shall not require
Galati's policies to contribute in the event of a loss." (Id.
at 2). Payments for Mr. Foraker's work were always issued to
Jeffco (Doc. # 93-20). Mr. Foraker was compensated by the
job, not by the amount of time he worked (Doc. # 93-11 at
82:21-83:1; Doc. # 93-13). Galati did not provide standard

2

employee benefits like health insurance (Doc. # 93-11 at 30:6-13).

Galati created work orders containing the description of the work it offered to Jeffco. (Doc. # 93-11 at 23:23-24:7). Jeffco reviewed the work orders and had a right of first refusal for all detail work. (Id. at 92:18-93:15). The work orders included tasks such as painting, detailing, and washing boats that were in Galati's control. (Doc. # 93-13). Mr. Foraker reviewed the orders every day. (Doc. # 93-11 at 35:9-23). Galati would place the work orders in order of priority. (Id. at 65:14-19). Mr. Foraker performed the tasks in the order in which Galati placed the work orders. (Id. at 23-24). Jeffco performed work on boats Galati owned and boats that belonged to Galati's customers. (Doc. # 93-14). Galati dictated the priority of Mr. Foraker's work each day (Doc. # 93-11 at 65:20-25), and Galati managers and employees "would look at [his] work when it was completed." (Id. at 37:10-11).

Jeffco did not secure workers compensation insurance for 2020. (93-5 at 30:12-14). Neither Jeffco nor Mr. Foraker applied for a Notice of Election to be Exempt through the Department of Financial Services, Division of Workers' Compensation. (Doc. # 93-4).

B. **The Insurance Policy**

Southern Owners issued a Garage Liability Policy (the "Policy") to Jeffco that was effective from March 25, 2020, until March 25, 2021. (Doc. # 93-6). The Policy contains an Additional Insured Endorsement, stating that Galati is an additional insured under the Policy "but only with respect to liability arising out of [Jeffco's] work for that insured by or for [Jeffco]." (Doc # 79-1 at 21). The Policy provides that Southern Owners "will pay those sums that you become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies." (Id. at 28).

The Policy also contains an Employer's Liability exclusion, which excludes from coverage "Bodily injury to: (a) [a]n employee of any insured arising out of and in the course of employment by any insured." (Id. at 32).

Finally, the Policy also contains a Workers Compensation exclusion, which provides that the insurance policy does not apply to "[a]ny obligations that would be payable under . . . worker's compensation law[.]" (Id. at 30).

C. **The Underlying Lawsuit**

On October 9, 2020, Galati requested that Mr. Foraker buff the isinglass of the Red Lion, a yacht owned by one of

Galati's customers. (Doc. 93-8 at 4-5). Mr. Foraker was injured while working on the yacht. (Doc. # 93-5 at 4).

Galati entered into a service agreement with the owner of the Red Lion. (Doc. # 93-9). The boat was on Galati's property as part of that agreement. (Doc. # 93-10 at 99:5-25, 100:1-6). The isinglass was not mentioned in the service agreement. See (Doc. # 93-9) (detailing service work to be provided). Instead, after the service work was complete, the Red Lion's captain "report[ed]" that the isinglass was scratched. (Doc. # 93-10 at 90:20). "[T]o make it go away," Galati chose to fix the scratch. (Id.). When asked if the "captain basically asked Galati to take care of" the scratch, Mike Galati (Galati's corporate representative) responded, "No. I think the captain was reporting [the scratch]." (Id. at 90:25-91:2). The purchase order issued for Jeffco's work shows that it was billed as an internal work order and that no customer was charged. (Doc. # 93-19; Doc. # 93-10 at 89:13-20).

On August 19, 2021, Mr. Foraker sued Galati in Florida state court for negligence (the "Underlying Lawsuit"). (Doc. # 93-7). In his Underlying Complaint, Mr. Foraker alleged that, through his business, Jeffco Marine Services, Inc., he performed marine detailing work for Galati as a contractor.

(Id. at 1-2). Mr. Foraker alleges he was injured doing exactly the work he agreed to perform for Galati. See (Id. at ¶ 16) ("While Plaintiff was performing work under Defendant's orders, at the direction of Defendant, and on the vessel 'Red Lion' which was under Defendant's ownership or control, he slipped and fell from the top of the tower/ladder"). Specifically, he alleged that he slipped due to the shoe coverings Galati required him to wear. (Id. at 3). The parties' memoranda indicate that the Underlying Lawsuit is still open and active.

Pursuant to the Additional Insured clause in the Policy, Galati sought a defense and indemnification from Southern Owners in the Underlying Lawsuit. (Id. at ¶¶ 15, 17).

**D. The Instant Complaint and Counterclaim**

In its second amended complaint, Southern Owners seeks a declaratory judgment on three points. First, Southern Owners claims that the allegations in the Underlying Lawsuit arise out of Galati's general business practices and thus are excluded from coverage under the plain language of the Policy. (Doc. # 79-1 at 5-6). Second, it argues that the Employer's Liability exclusion serves to bar coverage because Mr. Foraker was Jeffco's employee, Mr. Foraker was acting in the scope of his employment when he was injured, and Mr. Foraker

was thus either Galati's "statutory employee" or actual employee for purposes of Policy coverage. (Id. at 6-7). Third, Southern Owners alleges that the Worker's Compensation exclusion bars coverage because Mr. Foraker was injured while performing work requested by Galati, Mr. Foraker was therefore Galati's statutory or actual employee, and Galati is liable under Florida's workers compensation law to Mr. Foraker. (Id. at 8-9).

Furthermore, Southern Owners seeks a declaratory judgment that (1) the Policy does not provide insurance coverage for the claims alleged in the Underlying Suit or any and all other claims arising from the incident that occurred on October 9, 2020; and (2) that Southern Owners has no duty to defend or indemnify Galati for any and all claims alleged in the Underlying Suit or any and all other claims arising from the incident that occurred on October 9, 2020. (Id. at 6, 7-8, 9).

The parties now both seek entry of summary judgment in their favor. (Doc. ## 92, 93). Each party has responded (Doc. ## 99, 100) and Southern Owners has replied. (Doc. # 102). The Motions are ripe for review.

## II.  <u>Legal Standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the

pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist. Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of

establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004); see also United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed[.]" (citation omitted)).

## III. **Analysis**

At the outset, the Court notes that both parties failed to follow the requirements the Court laid out in its order regarding summary judgment briefing. (Doc. # 33). In its "Statement of Material Facts" section, Galati failed to list each material fact in separate, numbered paragraphs. See (Id. at 1) ("The statement of material facts must list each material fact alleged not to be disputed in separate, numbered paragraphs."). For its part, Southern Owners failed to include evidence in its statement of material facts that is material and that it references at several points in its Motion. The Court is not required to consider this evidence. See (Id. at 3) ("When resolving a motion for summary judgment, the Court has no independent duty to search and consider any

part of the record not otherwise referenced and pinpoint cited in the statement of material facts and response thereto."). Several times, both parties cite to record evidence that does not relate to the material fact it supposedly supports.

The Court now turns to the merits of the Motions.

**A. <u>Southern-Owner's Motion for Summary Judgment</u>**

Southern Owners moves for summary judgment on the basis that three exclusions in the Policy bar coverage for Mr. Foraker's claim. First, Southern Owners argues that the Employer's Liability and Workers Compensation exclusions apply because Mr. Foraker is either Galati's statutory employee or its actual employee. (Doc. # 93 at 14-25). Second, it argues that the Additional Insured clause prevents coverage because Galati's "general business practice" of requiring shoe coverings – not Mr. Foraker's work for Galati – caused the accident. (<u>Id.</u> at 25-26).

**1. <u>Additional Insured Clause</u>**

Southern Owners argues that Galati is not an Additional Insured for Mr. Foraker's claims. The Additional Insured clause states that Galati is an Additional Insured under the Policy "but only with respect to liability arising out of [Jeffco's] work for that insured by or for [Jeffco]." (Doc. # 79-1 at 72). Southern Owners contends that liability arises

from Galati's business practice of requiring workers to wear shoe coverings on boats, "not because of Jeffco's scope of work." (Doc. # 93 at 25).

In a diversity action, the Court must apply "the substantive law of the forum state." Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998). Here, Florida law governs whether Southern Owners owes Galati a duty to defend and indemnify against Mr. Foraker's claims. Under Florida law, the terms used in an insurance contract are given their ordinary meaning, and the policy must be construed as a whole "to give every provision its full meaning and operative effect." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). An unambiguous policy provision is "enforced according to its terms whether it is a basic policy provision or an exclusionary provision." Hagen v. Aetna Cas. & Sur. Co., 675 So. 2d 963, 965 (Fla. 5th DCA 1996).

Southern Owners cites Great American Insurance v. National Union Fire Insurance Company, 574 F. Supp. 2d 1294 (S.D. Fla. July 7, 2008), to support its contention that Mr. Foraker's injuries do not arise out of his work for Galati. (Doc. # 93 at 25-26). In Great American, the court determined that the contractor was not covered as an additional insured

when the subcontractor was injured while doing work outside the scope of the subcontracting agreement. Great Am., 574 F. Supp. 2d at 1299. That case can be distinguished from the case at bar. Here, Mr. Foraker alleges he was injured doing exactly the work he agreed to perform for Galati. See (Doc. # 93-7 at ¶ 16) ("While Plaintiff was performing work under Defendant's orders, at the direction of Defendant, and on the vessel 'Red Lion' which was under Defendant's ownership or control, he slipped and fell from the top of the tower/ladder"); see also (Doc. # 93-10 at 90:4-7) ("I know Dan and Mike talked about it, . . . and Mike didn't have his equipment on property to do it, so Dan asked Mikey to get it and asked Jeffco to buff [the isinglass].").

Further, under Florida law, the phrase "arising out of" as used in the Policy "should be interpreted broadly." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1275 (11th Cir. 2008). "The term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'" Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528, 539 (Fla. 2005) (quoting Hagen v. Aetna Cas. &. Sur. Co., 675 So. 2d 963, 965 (Fla. 5th DCA 1996)). The Court declines to read

the phrase "arising out of" so narrowly as to prevent coverage
when Mr. Foraker was injured doing exactly the work Galati
asked of him.

### 2. Employer's Liability and Workers Compensation Exclusions

Southern Owners contends that the Employer's Liability
and Workers Compensation exclusions bar coverage under the
Policy because Mr. Foraker was either Galati's statutory
employer or his actual employer. (Id. at 14-25). Therefore,
Southern Owners argues, it is entitled to a declaration that
it has no duty to defend or indemnify Galati. Specifically,
it argues that Galati is a statutory employer because it had
a contractual agreement with the owner of the Red Lion and
sublet to Jeffco its obligation to clean the isinglass.
Additionally, it argues that the evidence shows Mr. Foraker
was Galati's actual employee.

"Under Florida law, employees of a statutory employer
are 'treated identically to actual employees in relation to
standard employee exclusion clauses' in commercial insurance
policies." Mid-Continent, 824 F. App'x at 647 (11th Cir. 2020)
(quoting Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318,
1322–23 (11th Cir. 2014)). Florida's Workers' Compensation
Law provides:

> In case a contractor sublets any part or parts of his or her contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.

Fla. Stat. § 440.10(1)(b). "[B]ecause contract work must be sublet to form the basis for statutory employer immunity under Section 440.10(1)(b), the statute requires that the contractor must sublet an obligation that is a part of a contract, express or implied in fact." Rabon v. Inn of Lake City, Inc., 693 So. 2d 1126, 1130 (Fla. 1st DCA 1997) (citing Woods v. Carpet Restorations, Inc., 611 So. 2d 1303 (Fla. 4th DCA 1992)).

When there is a dispute regarding the existence of an employer-employee relationship, Florida courts apply a multi-factor test to determine whether an individual is an employee or an independent contractor. See Cantor v. Cochran, 184 So. 2d 173, 174 (Fla. 1966). In Cantor, the Florida Supreme Court reaffirmed its approval of Restatement (Second) of Agency § 220 (1958), which sets out the factors to be considered in determining whether one is an employee or an independent contractor:

1. the extent of control which, by the agreement, the master may exercise over the details of the work;
2. whether or not the one employed is engaged in a distinct occupation or business;
3. the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
4. the skill required in the particular occupation;
5. whether the employer or workman supplies the instrumentalities, tools and a place of work for the person doing the work;
6. the length of time for which the person is employed;
7. the method of payment, whether by time or job;
8. whether or not the work is part of the regular business of the employer;
9. whether or not the parties believe they are creating the relation of master and servant;
10. whether the principal is or is not in business.

See 4139 Mgmt. Inc. v. Dep't of Lab. & Emp., 763 So. 2d 514, 516 (Fla. 5th DCA 2000) (listing Cantor factors).

First, Southern Owners has failed to show that it is entitled to a declaration that it has no duty to defend Galati. Under Florida law, "[t]he duty to defend must be determined from the allegations in [the underlying action]." Jones v. Fla. Ins. Guar. Ass'n, Inc., 908 So. 2d 435, 443 (Fla. 2005) (citations omitted). In other words, the duty to defend "is determined solely by the allegations against the insured, not by the actual facts, nor the insured's version of the facts." Irvine v. Prudential Prop. & Cas. Ins. Co., 630 So. 2d 579, 579–80 (Fla. 3d DCA 1993) (citation omitted). Therefore, "[w]hen the actual facts are inconsistent with the

16

allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend." Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So. 2d 810, 814 (Fla. 1st DCA 1985) (citations omitted).

"The duty to defend arises when the relevant pleadings allege facts that fairly and potentially bring the suit within policy coverage." Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318, 1323 (11th Cir. 2014) (quotation marks omitted). "If the underlying suit brings even one claim that falls within the scope of coverage, the insurer is obligated to provide a defense for the entire dispute." Land's End at Sunset Beach Cmty. Ass'n v. Aspen Specialty Ins. Co., 289 F. Supp. 3d 1259, 1265 (M.D. Fla. 2017). Any doubt about the duty to defend must be resolved in favor of the insured. Id.

"[W]hen an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." Castillo v. State Farm Fla. Ins. Co., 971 So.2d 820, 824 (Fla. 3d DCA 2007).

Southern Owners is incorrect when it argues that the allegations in the Underlying Complaint "give rise to the applicability of the Employer's Liability and Worker's

Compensation exclusions." (Doc. # 99 at 11). The Underlying Complaint states that (1) "Foraker was an owner of and performed marine detailing services for Jeffco," and (2) "Foraker performed marine detailing work for Galati through his company, Jeffco Marine Services, Inc. under a 'subcontractor agreement' between Galati and Jeffco." (Doc. # 93-7 at ¶¶ 6-7). It does not, however, state that Galati was performing contract work. Instead, it states only that Mr. Foraker "entered onto a marine vessel known as the 'Red Lion' which was under the custody and control of Galati." (Id. at ¶ 5).

To show that Galati was a statutory employer, Southern Owners must show that Galati itself had a contractual obligation that it sublet to Jeffco. See Rabon, 93 So. 2d at 1131) ("[T]he clear implication in this part of the Act is that there must be a contractual obligation on the part of the contractor, a portion of which he sublets to another." (quoting Jones v. Florida Power Corp., 72 So. 2d 285, 289 (Fla. 1954))). Additionally, the Underlying Complaint does not demonstrate that Mr. Foraker was Galati's actual employee. It alleges that Mr. Foraker was not an employee of Galati, that he performed his work for Galati under a subcontractor agreement between Galati and Jeffco, and that

he was not eligible for workers compensation benefits. (Doc. # 93-7 at ¶¶ 7-9). Southern Owners has not met its burden of demonstrating that the allegations in the Underlying Complaint are solely within the Policy's exclusions and, therefore, that it has no duty to defend Galati.

Second, Southern Owners has failed to show that it is entitled to a declaration that it has no duty to indemnify Galati at this stage of the case. When determining the duty to indemnify, Florida courts examine "the underlying facts . . . developed through discovery during the litigation" to determine an insurer's "narrower" duty to indemnify. U.S. Fire Ins. Co. v. Hayden Bonded Storage Co., 930 So. 2d 686, 691 (Fla. 5th DCA 2006). There are several material facts in dispute regarding Mr. Foraker's employment status.

Based on the record evidence the Court has reviewed, there is a genuine dispute regarding whether Galati was under a contractual obligation to polish the isinglass on the Red Lion. The Court notes here that Southern Owners' statement of material facts does not include evidence that shows Galati had such a contractual obligation.

Even if the Court considers evidence outside of the statement of material facts, there still appears to be a genuine dispute. Galati entered into a service agreement with

19

the owner of the Red Lion. (Doc. # 93-9). The boat was on Galati's property as part of that agreement. (Doc. # 93-10 at 99:5-25, 100:1-6). However, the isinglass was not mentioned in the service agreement. See (Doc. # 93-9) (detailing service work to be provided). Instead, the Red Lion's captain "report[ed]" that the isinglass was scratched and, "to make it go away," Galati chose to fix the scratch. (Doc. # 93-10 at 90:20). When asked if the "captain basically asked Galati to take care of" the scratch, Mr. Galati responded, "No. I think the captain was reporting [the scratch]." (Id. at 90:25-91:2). Additionally, the purchase order issued for Jeffco's work shows that it was billed as an internal work order and that no customer was charged. (Doc. # 93-19; Doc. # 93-10 at 89:13-20). From these facts, a reasonable jury could determine either that Galati had a contractual obligation to the owner of the Red Lion or that it chose to undertake additional work outside of any contractual agreement to fix a reported issue to avoid the displeasure of a long-time customer. Because there is a genuine dispute over whether Galati had a contractual agreement to fix the isinglass, the Court cannot determine as a matter of law that Galati was Mr. Foraker's statutory employer.

Furthermore, there is a genuine dispute regarding whether Mr. Foraker was Galati's actual employee. While some of the Cantor factors point to Mr. Foraker being Galati's employee, some of the factors favor Mr. Foraker being an independent contractor. For instance, Galati appears to have exercised a fair amount of control over the details of Mr. Foraker's work. Galati dictated the priority of Mr. Foraker's work each day (Doc. # 93-11 at 65:20-25), Galati managers and employees "would look at [his] work when it was completed" (Id. at 37:10-11), and Mr. Foraker worked for Galati from at least 2007 to 2020. (Doc. # 93-11 at 7:19-21). However, Galati and Jeffco entered a subcontractor agreement (Doc. # 93-3), payments for Mr. Foraker's work were always issued to Jeffco (Doc. # 93-20), Mr. Foraker was compensated by the job (Doc. # 93-13), and Galati did not provide standard employee benefits like health insurance. (Doc. # 93-11 at 30:6-13). Therefore, a reasonable jury could find either that Mr. Foraker was an actual employee of Galati or an independent contractor.

Based on these facts, a reasonable jury could find either that Mr. Foraker was Galati's employee or that he was an independent contractor. These genuine disputes of material fact preclude summary judgment on the issue of Southern

Owners' duty to indemnify. See Metsker v. Carefree/Scott Fetzer Co., 90 So. 3d 973, 982 (Fla. 2d DCA 2012) (reversing summary judgment where multiple Cantor factors pointed to the existence of an employee relationship, despite the parties' independent contractor agreement); Alexander v. Morton, 595 So. 2d 1015, 1016–18 (Fla. 2d DCA 1992) (reversing summary judgment predicated on a finding that an air-conditioning installer was an independent contractor where several of the Cantor factors raised a fact question about the existence of an employer-employee relationship); Pate v. Gilmore, 647 So. 2d 235, 236 (Fla. 1st DCA 1994) (reversing summary judgment based on a finding that a part-time stable hand was an independent contractor where several of the Cantor factors were more consistent with the status of an employee than an independent contractor).

The Court denies Southern Owners' Motion for Summary Judgment. (Doc. # 93).

   B. **Galati's Motion for Summary Judgment**

Galati moves for summary judgment on the basis that the Policy provides coverage for Mr. Foraker's claim against Galati because the Employer's Liability, Workers Compensation, and Additional Insured clauses do not bar coverage.

For the reasons stated above, Southern Owners failed to meet its burden of showing it has no duty to defend. It has not demonstrated that the allegations in the Underlying Complaint are cast "solely and entirely within [a] policy exclusion." Acosta, 39 So. 3d at 574. The Underlying Complaint alleges that Mr. Foraker was an independent contractor and that his injuries arose out of his work for Galati; these allegations do not indicate that any Policy exclusion applies. Accordingly, Southern Owners has a duty to defend Galati in the underlying case. See Castillo, 971 So.2d at 824 ("[W]hen an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation."); see also St. Paul Fire & Marine Ins. Co. v. Rosen Millennium, Inc., 337 F. Supp. 3d 1176, 1183 (M.D. Fla. 2018) ("An insurer's duty to defend is distinct from and broader than the duty to indemnify."). The Court grants Galati's Motion for Summary Judgment as to Southern Owners' duty to defend.

However, as discussed above, a reasonable jury could find either that Mr. Foraker was a statutory or actual employee of Galati or that he was an independent contractor.

23

Therefore, the Court denies Galati's Motion as to Southern Owners' duty to indemnify.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1)   Plaintiff Southern Owners Insurance Company's Motion for Summary Judgment (Doc. # 93) is **DENIED**.

(2)   Defendant Galati Yacht Sales, Inc.'s Motion for Summary Judgment (Doc. # 92) is **GRANTED** as to the issue of Southern Owners' duty to defend and **DENIED** as to the issue of Southern Owners' duty to indemnify.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 17th day of January, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE